# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

GLENN NYBERG,

      *Plaintiff,*

vs.

      Case No. 15-1359-EFM-JPO

ZURICH AMERICAN INSURANCE COMPANY

      *Defendant.*

## MEMORANDUM AND ORDER

All ten of Plaintiff Glenn Nyberg's fingers were at least partially amputated after he suffered severe frostbite while mountain climbing in Nepal. Nyberg was insured by Defendant Zurich American Insurance Company ("Zurich") through his employer. His policy provided benefits for the accidental dismemberment of the thumb and index finger of the same hand. But Zurich denied Nyberg's claim for such benefits because it determined that the loss of Nyberg's fingers (1) was caused by illness, disease, or infection; and (2) failed to satisfy the policy's requirements. Zurich's decision was affirmed after Nyberg appealed. Nyberg then filed this action, challenging Zurich's denial of accidental dismemberment benefits. Zurich moves for summary judgment that the policy did not cover Nyberg's injury (Doc. 21). Nyberg also seeks summary judgment, arguing that Zurich's reasons for denying him benefits were all erroneous

(Doc. 42). Because the partial severance of Nyberg's fingers is not covered by the unambiguous language of the policy, the Court grants Zurich's motion for summary judgment.[1]

## I. Factual and Procedural Background

In 2014, Glenn Nyberg attempted to climb Mount Cho Oyu in Nepal—the sixth highest mountain in the world. During the climb, he developed severe frostbite and suffered from a gastrointestinal ("GI") bleed. As a result of the frostbite, all ten of Nyberg's fingers were at least partially amputated. Through his employer, Nyberg had a group accident insurance policy issued by Zurich American Insurance Company. The policy is an "employee welfare benefit plan" as defined in 29 U.S.C. § 1002(1), and is specifically covered by the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq. The policy provides a benefit for the "covered loss" of a thumb and index finger of the same hand. Under the policy, a "covered loss" of a thumb or index finger means "[a]ctual severance through or above the metacarpophalangeal joint of a thumb or index finger." The metacarpophalangeal ("MCP") joint is the point where a person's finger or thumb meets his hand. The policy also contains several general exclusions. The policy does not cover a loss if it is caused by or results from: "illness, disease, or infection" or "parasailing, bungee jumping, or any other similar activity."

On January 16, 2015, Nyberg submitted a claim to Zurich seeking benefits for the loss of the thumb and index finger on his right hand. The claim avers that Nyberg's right thumb was amputated at the "pulp" and his right index finger was amputated at "$P_1$." The terms "pulp" and "$P_1$" are medically significant, but for the sake of simplicity, the point of amputation for both

---

[1] Zurich has also filed its First Amended Motion for Leave to File First Amended Answer and Affirmative Defenses and to Substitute the Amended Answer and Affirmative Defenses for the Current Exhibit B to Defendant's Pending Motion for Summary Judgment (Doc. 46). Because Zurich's motion for summary judgment disposes of the case, the Court need not consider Zurich's motion for leave.

Nyberg's right thumb and index finger was located between the MCP joint and the fingertip.  To put it even more plainly, Nyberg has about half of his right thumb and a quarter of his right finger remaining after the amputations.

On May 5, Zurich sent Nyberg a letter informing him that it had denied his claim.  Zurich determined that the loss of Nyberg's digits was caused by illness or disease—specifically, the GI bleed.  Additionally, Zurich found that the amputations he endured failed to meet the standard set forth in the policy. Zurich explained that

> [t]he policy contains an exclusion for losses caused, either directly or indirectly, by illness or disease.  In addition, for lower extremities, the policy requires that the severance occur at or above the ankle and that the severance of fingers involve the thumb and index finger of the same hand at the metacarpophalangeal joint.  It is our opinion that the loss is subject to the illness or disease exclusion, and that the losses to the digits did not satisfy the policy requirements, therefore, in keeping with the policy provisions, benefits are not payable.

Nyberg appealed Zurich's determination on May 14.  He disputed Zurich's finding that his GI bleed caused his frostbite. On August 5, Zurich informed Nyberg that the ERISA Committee had met and affirmed the denial of benefits.  In its letter explaining its decision, the ERISA Committee informed Nyberg that the records indicated that his GI symptoms "may have preceded the frostbite of the extremities, triggering the 'illness, disease, or infection' exclusion."  Moreover, the Committee agreed with Zurich that Nyberg's amputations did not meet the policy's requirement of "actual severance through or above the [MCP] joint of a thumb or index finger."  Lastly, the Committee noted that "mountain climbing in Nepal may be excluded as an extra-hazardous activity under the policy exclusions."

Nyberg brings this action challenging Zurich's decision not to provide him benefits for the loss of his right index finger and thumb.  Both parties seek summary judgment.  Zurich seeks

judgment that the amputation of Nyberg's finger was not "through or above" the MCP joint, and therefore, his loss is not covered by the policy. Nyberg seeks judgment that the amputation of his finger was in fact "above" the MCP joint. In addition, Nyberg seeks judgment that neither the "illness or disease" nor the extra-hazardous activity exclusions apply to his case.

## II.     Legal Standard

Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law.[2] A fact is "material" when it is essential to the claim, and issues of fact are "genuine" if the proffered evidenced permits a reasonable jury to decide the issue in either party's favor.[3] The moving party bears the initial burden of proof, and must show the lack of evidence on an essential element of the claim.[4] If the moving party carries this initial burden, the non-moving party that bears the burden of persuasion at trial may not simply rest on its pleading but must instead "set forth specific facts" from which a rational trier of fact could find for the non-moving party.[5] These facts must be clearly identified through affidavits, deposition transcripts, or incorporated exhibits; conclusory allegations alone cannot survive a motion for summary judgment.[6] To survive summary judgment, the non-moving party's evidence must be

---

[2] Fed. R. Civ. P. 56(a).

[3] *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006).

[4] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Cartrett*, 477 U.S. 317, 322-23 (1986)).

[5] *Id.* (citing Fed. R. Civ. P. 56(e)).

[6] *Mitchell v. City of Moore*, 218 F.3d 1190, 1197-98 (10th Cir. 2000) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th. Cir. 1998)).

admissible.[7] The Court views all evidence and reasonable inferences in the light most favorable to the party opposing summary judgment.[8]

### III.   Analysis

Nyberg brings this action under 29 U.S.C. § 1132(a)(1)(B). The Court reviews the denial of benefits de novo "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."[9] When the plan does give the administrator such discretion, the Court applies a deferential standard of review and asks whether the denial of benefits was arbitrary and capricious.[10] Here, the parties agree that Zurich had discretionary authority to determine eligibility for benefits and to construe the terms of the plan. But Nyberg argues that for various reasons, Zurich is entitled to either zero or little deference. While maintaining that it is entitled to deference, Zurich argues that the policy language is unambiguous, and thus, it should prevail regardless of the standard applied by the Court. Zurich argues correctly that the standard of review is irrelevant if Nyberg's injury is not covered by the unambiguous policy language.[11] Thus, the Court first turns to the policy language.

Zurich argues that the partial amputations of Nyberg's right index finger and thumb are not covered by the unambiguous language of the policy. To be a "covered loss" under the

---

[7] *Adams v. Am. Guar. & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000).

[8] *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

[9] *Firestone Tire & Rubber Co. v. Bruch*, 483 U.S. 101, 115 (1989).

[10] *Martinez v. Plumbers Nat'l Pension Plan*, 795 F.3d 1211, 1214 (10th Cir. 2015) (quoting *Weber v. GE Grp. Life Assurance Co.*, 541 F. 3d 1002, 1010 (10th Cir. 2008)).

[11] *See id.* at 1215 ("It is unnecessary for us to determine whether [the Defendant] in fact violated ERISA's procedural requirements or whether any of the alleged violations would be serious enough to warrant de novo review because, even considering [the Defendant's] denial of benefits de novo, we would affirm.").

policy, the right index finger and thumb both must be amputated "through or above" the MCP joint. Nyberg's right index finger and thumb were not amputated through the MCP joints. Rather, they were both amputated between the MCP joint and fingertip. Put another way, the amputations were distal to the MCP joint. "Distal" means "[a]natomically located far from a point of reference, such as an origin or a point of attachment."[12] For example, the elbow is distal to the shoulder, the wrist is distal to the elbow, and the fingers are distal to the wrist. Conversely, "proximal" means "[n]earer to . . . the midline [or trunk] of the body."[13] Thus, the wrist is proximal to the fingers, the elbow is proximal to the wrist, and the shoulder is proximal to the elbow. Zurich argues that as understood in the policy, "above" unambiguously means "proximal" and not "distal." Therefore, Zurich contends that Nyberg's amputations are not covered under the policy's unambiguous language because severance of both the finger and thumb occurred distal to the MCP joint.[14]

Language is ambiguous if it is "reasonably susceptible to more than one meaning, or where there is uncertainty as to the meaning of the term."[15] In determining whether policy

---

[12] *The American Heritage Dictionary of the English Language* 523 (5th ed. 2011).

[13] *Id.* at 1419.

[14] In support of its argument, Zurich asks the Court to take judicial notice of: (1) the anatomical location of the MCP joint; (2) the name and location of the bones of the fingers; (3) and the medical definitions of the terms "distal," "proximal," and "pulp." However, these facts have all been accepted as uncontroverted by Nyberg. The Court has defined "distal" and "proximate" above, and there is no dispute that the MCP joint is where the finger meets the hand, and Nyberg's right index finger and thumb were amputated distal to that joint. There is only one fact that Zurich requests the Court to take judicial notice of that Nyberg controverts: that Nyberg's digits were amputated "distal to (or below)" the MCP joint. In short, Zurich wants the Court to take judicial notice that "distal" and "below" are synonymous. Because it is not generally known that "below" actually means "distal" and "above" actually means "proximal" in the context of a group accident policy insurance, the Court will not take judicial notice of that fact. *See, e.g., York v. Am. Tel. & Tel. Co.*, 95 F. 948, 958 (10th Cir. 1996) (refusing to take judicial notice of fact that was determinable, but not generally known).

[15] *Miller v. Monumental Life Ins. Co.*, 502 F.3d 1245, 1250 (10th Cir. 2007) (quoting *Admin. Comm. of Wal-Mart Assocs. Health & Welfare Plan v. Willard*, 393 F.3d 1119, 1123 (10th Cir. 2004)) (internal quotation mark omitted).

language is ambiguous, the Court interprets the policy according to its plain meaning.[16] That is to say, the Court gives language "its common and ordinary meaning *as a reasonable person in the position of [the participant]*, not the actual participant, would have understood the words to mean."[17] With that in mind, Zurich's citation to medical evidence and appeal to medical usage is of little value in determining whether the policy is ambiguous. Rather, the relevant inquiry is whether a reasonable person in Nyberg's position would believe he suffered a covered loss.[18] But this standard does not excuse an insured from reading the entire policy—it is still necessary to consider the policy in its entirety when determining whether an ambiguity exists.[19]

Zurich argues that "above" as used in the policy can only mean "proximal" because the insurer could not have intended to cover the loss of a finger when the mere tip of a participant's finger is severed. In support of this argument, Zurich cites a non-binding, 1986 case. In *Farthing v. Life Insurance Company of North America*,[20] the Indiana Court of Appeals considered the same issue that this Court faces here: whether the phrase "through or above the [MCP] joints" was ambiguous.[21] In that case, the Indiana court reasoned that

> [s]ince the contract provides for compensation if the injury occurs above the joint, but not compensation if the injury occurs below the joint, it is obvious that 'above' must mean between the joint and the arm. It would make no sense for the

---

[16] *Rasenack v. AIG Life Ins. Co.*, 585 F.3d 1311, 1318 (10th Cir. 2009) (citing *Kellogg v. Metro. Life Ins. Co.*, 549 F.3d 818, 829 (10th Cir. 2008)).

[17] *Blair v. Metro. Life Ins. Co.*, 974 F.2d 1219, 1221 (10th Cir. 1992).

[18] *Miller*, 502 F.3d at 1250.

[19] *Weight Loss Healthcare Ctrs. of Am. Inc. v. Office of Pers. Mgmt.*, 655 F.3d 1202, 1210-11 (10th Cir. 2011).

[20] 500 N.E.2d 767 (Ind. Ct. App. 1986).

[21] *Id.* at 769-70.

>company to compensate for the loss of a small portion of the finger, but not to compensate for the loss of a larger portion.[22]

Accordingly, Zurich argues that the only reasonable interpretation of "above" is "proximal" because the proposition that mere severance of the tips of a finger would be covered is "an absurd result that any reasonable person in Plaintiff's position would never believe."

Conversely, Nyberg contends that there is nothing absurd about the possibility of Zurich covering the partial severance of a finger. Instead, Nyberg argues that Zurich's interpretation of "above" meaning "proximal" is nonsensical. Nyberg notes that benefit he was seeking was for the loss of thumb and index finger. And since the MCP joint is the point where the finger meets the hand, severance proximal to the MCP joint is not severance of a finger at all. Instead, severance proximal to the MCP joint looks more like the partial loss of a hand than the whole loss of a finger, and would presumably be covered as the loss of a hand.

In isolation, each party's interpretation seems reasonable. Or at the very least, neither party's interpretation seems more absurd than the other's. But in interpreting an ERISA plan, the Court must look at the plan "as a whole."[23] Apparent ambiguities can be resolved by reading the contested provision in the context of the entire policy.[24] Upon review of the entire policy, Nyberg's claim that that "above" means "distal" leads to the unreasonable result that the slightest partial amputation of a finger would be covered but the loss of an entire hand would not.

---

[22] *Id.* at 770.

[23] *Miller*, 502 F.3d at 1250.

[24] *Weight Loss Healthcare*, 655 F.3d at 1210-11.

The policy covers the accidental dismemberment of the hand and certain fingers, but not of an arm. Loss of a finger or thumb is covered if severance occurs "through or above" the MCP joint, and loss of a hand is covered if severance occurs "through or above" the wrist. Nyberg argues that "above" means "distal" and therefore, mere severance of a fingertip constitutes the covered loss of a finger. And thus under Nyberg's reading of the policy, partial severance of the hand—for example, directly proximal to the MCP joint—would constitute the covered loss of a hand and not a finger. But severance immediately proximal to the wrist would not be a covered loss at all, because it would not be "through or above" the wrist as understood by Nyberg. A participant who suffered severance through his forearm, and therefore lost his entire hand and all of his fingers, would not receive any benefit for the loss of his hand or fingers, because as understood by Nyberg, that severance would have occurred "below" or "proximal" to the wrist.

Accepting Nyberg's interpretation, the partial loss of a finger or hand would be covered, but the partial or whole loss of an arm—and therefore of the participant's entire hand—would warrant no benefit. It is unreasonable to believe that the policy would intend to cover the loss of a fingertip but not the entire loss of a participant's hand and all of his fingers. The Court agrees with the Indiana Court of Appeals that "[i]t would make no sense for [Zurich] to compensate for the loss of a small portion of the finger, but not to compensate for the loss of a larger portion."[25]

Because the policy does not provide any benefit for the partial or whole loss of an arm, "above" can only reasonably be understood to mean "proximal" with regard to the MCP joint. And because the policy is susceptible to only one reasonable interpretation, the Court finds that it

---

[25] *Farthing*, 500 N.E.2d at 770.

is unambiguous.[26]  As a matter of law, Zurich correctly determined that Nyberg did not suffer a covered loss of his right index finger and thumb.

### IV.     Conclusion

Because "above" could not reasonably mean "distal" as understood in the policy, Nyberg did not suffer a cover loss under the policy.  Therefore, Zurich's motion for summary judgment (Doc. 21) is granted.  The Court need not determine whether Zurich's other grounds for denial were proper, and thus, Nyberg's motion for summary judgment (Doc. 42) is denied as moot.  Lastly, since Zurich's motion disposes of this case, the Court need not consider Zurich's amended motion for leave to file its first amended answer and affirmative defenses (Doc. 46), and that motion is also denied as moot.

**IT IS THEREFORE ORDERED** that Zurich's Motion for Summary Judgment (Doc. 21) is **GRANTED**.

**IT IS FURTHER ORDERED** that Nyberg's Motion for Summary Judgment (Doc. 42) is **DENIED AS MOOT**.

---

[26] *Cf. Miller*, 502 F.3d at 1253 ("[W]e hold that the Plan is ambiguous because [a term] is reasonably susceptible to more than one meaning.").

**IT IS FURTHER ORDERED** that Zurich's Amended Motion for Leave to File First Amended Answer and Affirmative Defenses and to Substitute the Amended Answer and Affirmative Defenses for the Current Exhibit B to Defendant's Pending Motion for Summary Judgment (Doc. 46) is **DENIED AS MOOT**.

**IT IS SO ORDERED**.

Dated this 16th day of November, 2016.

*Eric F. Melgren*
ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE